<pre>
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION

 3   UNITED STATES OF AMERICA,      Case No. 1:12CR238
                                    Akron, Ohio
 4             Plaintiff            Monday, May 7, 2012
                                    1:45 p.m.
 5        vs.

 6   DOUGLAS L. WRIGHT,
     BRANDON BAXTER,
 7   ANTHONY HAYNE,
     CONNER C. STEVENS,
 8   JOSHUA STAFFORD

 9             Defendants.

10                TRANSCRIPT OF STATUS CONFERENCE
              BEFORE THE HONORABLE DAVID D. DOWD, JR.
11                 UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Government:      Duncan T. Brown
                              Thomas E. Getz
14                            Assistant United States Attorney
                              801 West Superior Avenue
15                            Suite 400
                              Cleveland, Ohio 44113
16
     For the Defendants:      Anthony J. Vegh, Attorney
17                            Vecchio & Vegh
                              526 Superior Avenue East, #720
18                            Cleveland, Ohio 44114

19                            John S. Pyle, Attorney
                              Gold & Pyle
20                            526 Superior Avenue East, #1140
                              Cleveland, Ohio 44114
21
                              Michael J. O'Shea, Attorney
22                            O'Shea & Associates
                              19300 Detroit Road, #202
23                            Rocky River, Ohio 44116

24                            Jennifer E. Schwartz, Attorney
                              Schwartz, Downey & Company
25                            45 West Prospect Avenue
                              Cleveland, Ohio 44115
</pre>

```
 1   For the Defendants:      Timothy C. Ivey, Attorney
                              Office of the Federal Public
 2                            Defender
                              1660 West Second Street, #750
 3                            Cleveland, Ohio 44113

 4                            Andrew P. Hart
                              Office of the Federal Public
 5                            Defender
                              617 Adams Street
 6                            Toledo, Ohio 43604

 7   Court Reporter:          Jocelyn S. Harhay, RPR
                              Bish & Associates, LLC
 8                            150 Smokerise Drive
                              Wadsworth, Ohio 44281

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings recorded by mechanical stenography.
     Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S

 2              THE COURT:  The Court calls the case United

 3    States of America versus Douglas Wright, Brandon Baxter,

 4    Anthony Hayne, Conner Stevens, and Joshua Stafford, Case

 5    No. 1:12CR238.  The Defendants have previously been

 6    arraigned, and I scheduled a status conference today to

 7    review a number of matters.

 8              The, maybe the first issue I want to

 9    address is the government's motion to declare the case

10    complex.  To my knowledge, there's been no objection to

11    that motion.

12              Is that accurate?

13              MR. VEGH:  Tony Vegh on behalf of Douglas

14    Wright.  Good morning, Judge.  We have no objection.

15              THE COURT:  Very well.

16              MR. PYLE:  John Pyle.  Likewise, Your

17    Honor, on behalf of Mr. Baxter.

18              THE COURT:  Thank you.

19              MR. O'SHEA:  Morning, Your Honor.  Michael

20    O'Shea on behalf of Mr. Hayne.  No objection.

21              MS. SCHWARTZ:  Morning, Your Honor.

22    Jennifer Schwartz on behalf of Conner Stevens.  We have

23    no objection.

24              THE COURT:  Thank you.

25              MR. IVEY:  Tim Ivey along with Andrew Hart
```

4

1    of our office on behalf of Joshua Stafford.  We have no

2    objection.

3                     THE COURT:  Thank you.  The government's

4    motion is granted.

5                     The next motion I'd like to address is the

6    government's motion for a Protective Order, re:  audio

7    and video recordings of a government witness that's

8    filed on the 10th of May and ask if any counsel for the

9    Defendants has any objection to that motion.

10                    MR. O'SHEA:  That's to follow the same

11    Order that --

12                    THE COURT:  Well, I -- you don't have -- if

13    there's no objection, I don't think you have to voice

14    consent.

15                    I, what I'm looking for, is there any

16    objections?  I'll hear the objections.  If I don't hear

17    any objections, I'm going to grant the motion.

18                    Hearing no objections, the motion is

19    granted.  That's a pretty important motion.  And I'd ask

20    counsel of the government....

21                    You've identified the witness by three

22    initials.  And is there discovery material being turned

23    over to counsel for the Defendants that involves that

24    person?

25                    MR. BROWN:  Yes, Your Honor.  In fact, this

1       morning each counsel will receive a box that contains

2       personal effects of their client's and also about 30 or

3       so CD recordings of various things with further

4       discovery coming forthwith.

5                   THE COURT:  Thank you.  In any event, the

6       government's motion for Protective Order is granted.

7                   MR. HART:  Your Honor --

8                   THE COURT:  Yes.

9                   MR. HART:  -- morning.  We don't have an

10      objection to the restrictions placed in the Protective

11      Order.  We would ask the Court's consideration, and to

12      hear from the government's response, whether the Court

13      would consider striking the second paragraph of the

14      proposed Order.  It contains a factual finding which,

15      based on our consent to all the other restrictions, we

16      believe to be unnecessary and perhaps even problematic.

17      But I think, given our consent to every restriction,

18      every practical restriction suggested by the government,

19      that that finding in Paragraph 2 would be unnecessary

20      for the Court to issue a Protective Order.

21                  THE COURT:  Well, the second paragraph

22      reads as follows:  "The proposed Order of the Court

23      further finds that the dissemination of such images

24      except for the legitimate purpose of preparing for the

25      litigation of the case by the parties poses an

1     unnecessary and potentially serious risk to the security

2     of the witness and/or members of his/her family."

3          Do you want to address that on behalf of

4     the government?

5          MR. BROWN:  Well, Your Honor, this

6     Protective Order is -- the government would argue that

7     that's not a, a conclusion of fact.  It's, it's just a

8     recognition of the fact that one day after or maybe even

9     the day of the indictment various Internet blogging

10    websites attempted to identify a person.  I think in, in

11    the very recent history, if the Court looks to Florida

12    where a case of a, a man identified as a George

13    Zimmerman was harassed based on incorrect and erroneous

14    bloggings, that's what we want to protect.

15         I mean already the government can cite

16    articles.  I think there's one in Rolling Stone that was

17    rife with errors and incorrect information.  And the

18    government just does not want people acting on or

19    relying on incorrect information because that does pose,

20    as the Zimmerman case shows, a risk to family members of

21    people who may or may not be the correctly identified

22    person.

23         THE COURT:  Anybody else want to speak to

24    this?

25         MR. PYLE:  Your Honor, may I....  First of

7

1    all, the information in the blogs was correct.

2                    MR. BROWN:  Objection.  We're not

3    litigating the smoking gun.  And I don't think it's

4    appropriate.

5                    THE COURT:  Let's let him speak and then

6    you can respond.

7                    MR. PYLE:  Your Honor, I mean just

8    factually, this is not the Zimmerman case where someone

9    was incorrectly identified.

10                   Second, Your Honor, I want the Record to be

11   abundantly clear, as our president would say, that by,

12   by not objecting to the Protective Order we are not

13   waiving any objections as it relates to future motions

14   to change of venue in this case based upon, in part, the

15   government's press releases concerning this matter.  And

16   I just want to make that clear.

17                   THE COURT:  Thank you.

18                   Well, you wanted to speak.

19                   MR. O'SHEA:  On behalf Mr. Hayne, one of

20   the things that concerned me, as I indicated to counsel,

21   is that there's a certain amount of trial publicity,

22   Judge, that has already gone forward in this case, all

23   of it, quite frankly at this juncture, manufactured or

24   at least presented from the perspective of the

25   government.  And I just, you know -- and that obviously

1    has created a bit of a, a jury possibility -- a jury

2    taint possibility.

3            I mean you can -- Judge, if you may recall,

4    when the, these fellows were arrested, there were

5    photographs of them widely distributed both locally and

6    nationally.  There were videos.  There were -- there was

7    a press conference where the government stood behind a

8    podium with a number of agents and, and, and, you know,

9    billboards and everything else behind them, Judge.

10           And my concern is that we at least have

11   some opportunity to investigate whether or not that, in

12   light of the fact that this Protective Order will be

13   granted, might have tainted the jury to, a jury pool to

14   a certain perspective and that we are not barred from at

15   least expressing what our good-faith base

16   interpretations of the evidence as we perceive it to be

17   once we get to view it.

18           And, again, I think as you get here this

19   morning, Judge, we haven't really seen the hard core

20   evidence.  I know we are, I understand we are probably

21   going to see it today.  So that's our concern, Judge.

22   And there is rules, professional conduct that govern

23   every lawyer in this state when it comes to trial

24   publicity.  And they're laid out, Judge.  And I just

25   want to make sure if, if we comply with them that

1    certainly the government complies with them as well,

2    Judge.  That's all.  Thank you.

3              THE COURT:  Anything further?  Anybody want

4    to speak to --

5              MS. SCHWARTZ:  Your Honor, I would, I would

6    join in the comment made by other counsel and just state

7    that while we don't object to the issuance of the

8    Protective Order we also feel that Paragraph 2 is

9    unnecessary as long as the Order is in place.

10             THE COURT:  Anything further?  Well, I'm

11   going to, I'm going to approve the Order and it will

12   include Paragraph 2 over objections of the Defendants.

13             I have I think two motions, one on behalf

14   of Brandon Baxter and another on behalf of Conner

15   Stevens, to investigate a home, as to whether it would

16   be an acceptable site for the Defendants' electronic

17   monitoring in the event the Defendant is permitted to be

18   released on bond.  As I understand it, at the moment,

19   there has not been filed a motion for the Court to set

20   bond or to address the question of whether there should

21   be a Detention Order.  As I understand, that was I guess

22   waived so to speak before Judge White.

23             MR. PYLE:  May I be heard, Your Honor?

24             THE COURT:  Sure.

25             MR. PYLE:  Your Honor, it was collectively

1    decided on our appearance before Judge White that we --

2    that the hearing on the bond would be indefinitely

3    continued.  And there's provision for that in the rule.

4    We want to come, be able to come to you with, with

5    records, with support for our bond motion; and we're

6    still in that investigative stage.  And beyond that, we

7    didn't get discovery today.

8                So to answer your question, Your Honor,

9    it's still pending.  But we'd like, as a predicate, to

10   have Pretrial Services.

11               THE COURT:  I'm not going to do that until

12   I have a motion for bond and the government has an

13   opportunity to respond to it.  To me, ordering Pretrial

14   Services to investigate a home, a site for a possible

15   home detention is simply not timely at this point.  So

16   I'm not going to grant that motion.

17               I would like to -- and if there's going to

18   be a motion for bond, I'd like that, to get on with that

19   so I can get that quickly resolved.

20               I'd ask counsel collectively, do any of you

21   expect to file a motion for the Court to set bond?

22               MR. VEGH:  Your Honor, I intend to do

23   that --

24               THE COURT:  All right.

25               MR. VEGH:  -- on behalf of Mr. Wright.

11

1          MR. PYLE:  As do I on behalf of Mr. Baxter.

2          THE COURT:  All right.

3          MR. O'SHEA:  At this time, we do not,

4    Judge, but we reserve the right later.

5          THE COURT:  All right.

6          MS. SCHWARTZ:  Your Honor, we do want to

7    file such a motion on behalf of Mr. Stevens.

8          THE COURT:  All right.

9          MR. IVEY:  Your Honor, we do anticipate

10   filing a motion on behalf of Mr. Stafford.

11         THE COURT:  Then I ask that -- this is, I

12   believe this is the 17th of May.  I'd ask all such

13   motions be filed by the 21st of May, then I'll address

14   them at that point.  But as of, as of the moment, I'm

15   not going to order any Pretrial Services investigation

16   of a home site.

17         I now want to turn my attention to

18   scheduling the case for trial.  And my, my first choice

19   for trial is -- what was the date I had, the 10th of

20   September?

21         (A pause was taken.)

22         THE COURT:  My first date is Tuesday,

23   September 11th.  And that gives us three and a half

24   months to get ready, almost four months.  Is there any

25   objection to that trial date?

12

```
1            MR. BROWN:  None from the government, Your

2    Honor.

3            MR. VEGH:  Judge, it may not -- it may seem

4    picayune, but 9/11, Judge -- maybe it could be 9/12.

5    The day has significance in this country.  There's --

6            THE COURT:  Well, I hate to lose a day just

7    because people are worried about the anniversary.

8            MR. VEGH:  Well, Your Honor --

9            THE COURT:  These people aren't charged

10   with a 9/11 incident.

11           MR. VEGH:  Your Honor, the things that I

12   have read in the Affidavit has the word "terrorist."

13   "Terrorists" and "terrorism" has been used in a very

14   broad brush against my client and the other Defendants

15   here.  It's not -- I understand the Court's saying it's

16   just a date.  But we'd ask the Court to consider the

17   12th.

18           THE COURT:  All right.  Anybody else have a

19   similar motion?

20           MR. O'SHEA:  Judge, that week of September

21   11th is, is a terrible week.  I'm gone the entire --

22   just for what it's worth, Judge, I'm gone the entire

23   week before that on a long-planned, prepaid vacation.

24   So I won't --

25           THE COURT:  The week before, you're gone?
```

13

1    MR. O'SHEA:  Yes, sir.  So I would

2    literally spend the vacation preparing for this trial

3    and not -- so it's just not a date that works for me.

4    But if, if it works for everyone else, nevertheless I'll

5    go with it, Judge.

6    THE COURT:  Anybody else have any comment

7    about -- let's make it the 12th as to handle the

8    concern.

9    MR. IVEY:  Your Honor, I just want to have

10   my comments for the Record.  I think the whole week is

11   bad for reasons that Mr. Vegh says.  And that is because

12   every year around 9/11 there's, there's plenty of, of

13   memorials, documentaries; everything is going on about

14   terrorism during that entire week.  And I think since

15   this case is being labeled at least a terrorist type

16   case that the taint that would be put on the potential

17   jury pool at that particular time is significant.

18   I'm available during that week.  But I, I

19   think that because of the anniversary, during that week,

20   what's likely to be going on --

21   THE COURT:  Well, let's try -- let me hear

22   it -- is there any objections to starting the trial the

23   17th of September?

24   MR. IVEY:  That's fine for myself, Your

25   Honor.  I can't speak for the others.

14

1          THE COURT:  Anybody else have a problem?

2          MR. PYLE:  Your Honor, may I be heard?

3          THE COURT:  Sure.

4          MR. PYLE:  Your Honor, I have no objection

5   to that date being set.  I do want the Record to reflect

6   that we have not gotten any discovery.  I don't know the

7   scope of the investigation, the discovery, et cetera.

8          THE COURT:  Well, you have four months to

9   September.

10          MR. PYLE:  I understand that.  I understand

11   that.  You know, all of us here are working, Judge.  But

12   if we have to come back to you at some point and ask for

13   more time, please don't, please don't accept our setting

14   of that date as a definitive answer about the time

15   required for preparation.

16          THE COURT:  Well, are you retained or

17   appointed?

18          MR. PYLE:  Appointed, Your Honor.  We're

19   all appointed.

20          THE COURT:  Okay.  Well, if you've been

21   appointed to this case, I expect you to work diligently

22   on this case.  September 17 will be the trial date.

23   That gives you four months.  I don't want to hear you

24   didn't have a chance to get ready for it.  I got to

25   stick to it.  It's not the only case on my docket.  I

15

1    have to work with other cases.  So September 17th is the

2    trial date.  And we'll put an Order out to that effect.

3              Now, I would like to have a deadline for

4    motions.  I realize you haven't seen the materials yet.

5    But I'll set a deadline for motions as of Friday, June

6    29.  So if you have any motions, get them filed by then.

7              Now, is, is -- excuse me.  Go ahead.

8              MR. HART:  Thank you, Your Honor.  Your

9    Honor, just as a suggestion, if the Court would consider

10   a, setting a, perhaps a written status conference date

11   prior to the motion filing deadline, once we obtain the

12   discovery, I think we'll be in a better position to

13   describe to the Court logistically whether or not the

14   trial date would potentially --

15             THE COURT:  I don't want to hear about the

16   trial date.  I've already -- we've already discussed

17   that.  The trial date's now set in cement.  It's not

18   going to be changed.  I'm not going to listen to some

19   argument two months from now telling me, oh, you just

20   can't get ready.  If I set that kind of a date, then I

21   know I'm going to get a motion for continuance.

22             MR. HART:  Understood, Your Honor.  I just

23   want to offer the Court just that there may be some

24   logistical difficulties.

25             THE COURT:  You can always move me for a

```
 1    status conference.

 2                    MR. HART:  Thank you, Your Honor.

 3                    THE COURT:  But is there any problem with

 4    setting a, June 29th as a deadline for motions at least

 5    at this point?

 6                    MR. HART:  Not on behalf of Mr. Stafford.

 7                    THE COURT:  All right.  Now, let me ask

 8    counsel for the government....

 9                    Based on what you know about this case at

10    the moment, is there, is there -- would there be any

11    legitimate basis in your view for a motion for

12    severance?

13                    MR. BROWN:  No, Your Honor, not in the

14    United State's view.

15                    THE COURT:  All right.  Well, I spent some

16    time yesterday with the G.S.A. getting the courtroom set

17    up so that we could accommodate five Defendants.  And

18    the courtroom is set up as the way I expect it to be so

19    that everybody would have -- be able to be seated in the

20    proper place, be seated, the Defendants be seated beside

21    their lawyer.

22                    And when we start the trial on the 17th of

23    September, obviously the first thing I'd like to do is

24    impanel a jury.  And I will want proposed jury questions

25    about three weeks ahead of time so I have time to
```

17

1    develop a, a comprehensive jury questionnaire.  So any

2    proposed questions for the jury, questionnaire should be

3    filed with the Court by the 24th of August.

4                    How many of you have not been in my

5    courtroom and impaneled a criminal jury?  How many

6    defense counsel have not had that opportunity?

7                    Okay.  Well, one, two, three.

8                    Mr. Ivey, you haven't impaneled a jury in

9    my courtroom?

10                   MR. IVEY:  Actually I have not, Judge.

11                   THE COURT:  I don't know how you missed

12   that, that experience over all these years.

13                   MR. IVEY:  I've done it a million times

14   with Judge Oliver, none with you.

15                   THE COURT:  What I'll do, so you'll

16   understand the importance of the written jury

17   questionnaire, I do not send the questionnaire out ahead

18   of time.  I, I propose a questionnaire to be distributed

19   to the jurors after they're in the courtroom.  I don't

20   want to send it out ahead of time because all that is is

21   an invitation for a juror to figure out how to avoid

22   jury service.  And I conduct that -- that questionnaire

23   will be passed out to the jurors and then I explain the

24   questionnaire and then I invite each juror that reaches

25   the jury box to come up to the side bar and, and at

18

1    which time I review the responses of the, of the juror,

2    respected juror to the questionnaire.

3              So the questionnaire is pretty important.

4    And I'm surprised that only one of you -- who's been in

5    my courtroom before?  John I guess is the only one.

6              Well, you've, you've been through that

7    experience.

8              MR. PYLE:  I've had the privilege, Your

9    Honor.

10             THE COURT:  Yeah.  Okay.

11             And, and so that gives you an opportunity

12   to kind of eyeball the, the juror.  The problem with

13   five Defendants in a case is I can't have all Defendants

14   up here.  So I suppose the next question is whether I

15   should impanel the jury by inquiring of the jury --

16   juror, in the absence of all the jurors in the

17   courtroom, one by one by one.

18             And mainly that's a good idea in this case,

19   so that the only juror in the courtroom is the juror

20   being questioned.  And that's going to take us longer to

21   pick a jury but I think possibly in this case that would

22   be appropriate.

23             I'm kind of talking as I -- thinking as I'm

24   going along.  That means it's going to take longer to

25   get the jury.  But that might be pertinent in this case

19

1  so that, so that I would probably bring in my entire

2  panel and go through what I call name, rank, and serial

3  number type of questions of each juror and then excuse

4  all of them except the first juror and then question the

5  juror in the courtroom without other jurors being

6  present.

7          But then Defendants as well as defense

8  counsel can hear the responses so that the Defendants

9  can be involved with their lawyer as to whether or not

10  they feel that the respective juror should be or should

11  not be a target for a peremptory challenge.  So I think

12  possibly that's the better way to go.  That will take us

13  a little longer.  It might take two or three days to get

14  the jury, but I, I think as I, as I think about it, I

15  think maybe that's the appropriate way to go.

16          John, you've been here before so you -- do

17  you have any comment on that?

18          MR. PYLE:  Your Honor, I'm totally open to

19  that procedure.  We are going to be sending a lengthy

20  questionnaire.

21          THE COURT:  And I think the case deserves

22  it.  But I, I also want the Defendants to have the

23  opportunity to hear the question and answers of the

24  juror that would normally be a side bar.  Obviously I

25  can't do that at a side bar with five Defendants.

20

1          And so I think we'll do the other, which

2     means that we're probably going to take probably a

3     minimum of two days, maybe three days to get the jury.

4     And I, since I have a number divisible by -- I can

5     divide five into ten and come out with two, so I think

6     each, each juror -- each Defendant will have two

7     peremptory challenges.  The government will have six.

8     And, and if, if the Defendant whose pre -- up to give

9     the peremptory challenge doesn't want to use it, it's

10    got to be passed along to the other Defendants.  So

11    presumably in the process you'll, you'll use all your

12    ten challenges or at least think about it.

13          So I think we'll go that --

14          Yes, Mr. Ivey.

15          MR. IVEY:  Your Honor, I don't want to draw

16    the ire of the Court, but I just feel compelled to say

17    on the issue of severance, at this point I guess we

18    don't anticipate five for one.  But how can we know

19    whether or not we're really going to need to do that

20    prior to hearing any discovery in the case?  Because

21    it's my understanding --

22          THE COURT:  Well, I got a deadline here for

23    motions.

24          MR. IVEY:  I just didn't want to --

25          THE COURT:  No.  No.  I don't, I don't

1    think the issue of severance has been foreclosed.

2    Nobody motioned for it now.

3                    MR. IVEY:  Okay.

4                    THE COURT:  That's, that's an open issue as

5    far as I'm concerned.

6                    I'm just trying to get some dates here so

7    we, we can work at them steadily.  And, and I've tried

8    to explain why the jury questionnaire is so important.

9    Because it gets passed out to each juror and, and you

10   write the questions from the standpoint of -- a "yes"

11   answer probably doesn't require any follow-up unless the

12   question is, for instance, "Have you heard or have you

13   expressed an opinion about the facts in this case"?

14   "Yes."  Obviously I've got to follow up on that.

15                   And so those are the type of questions that

16   I, proposed questions that I expect to see in the jury

17   questionnaire.

18                   Did I set a deadline for filing motions for

19   bond?  I think I did.

20                   MR. PYLE:  The 21st.

21                   THE COURT:  Yeah.  Is there anything else

22   that I need to, to review with counsel today?

23                   MR. PYLE:  May I be heard, Your Honor?

24                   THE COURT:  Sure, John.

25                   MR. PYLE:  Your Honor, I don't -- I'm not

22

1     asking you to get involved in the micro management of

2     this case.  But there's one dimension that is just so

3     crucial I feel obligated to bring it to your attention.

4     And that is that at least my client is presently at CCA.

5     It is essential that he be able to look at every second

6     of audio and video tape.  And CCA puts serious

7     restrictions on that.  They only have one computer for

8     all attorneys to see all their clients there.  And at

9     the very minimum, it's going to take an Order from you.

10    I'm going to talk to the people at CCA to see what's

11    agreeable to them.  But I'm alerting you that may take

12    your intervention.

13              THE COURT:  Is there any other institution

14    where the marshal places defendants where that kind of a

15    rule does not apply?

16              MR. VEGH:  Your Honor, my client is at

17    Trumbull County Jail.  I don't know what their policy

18    is.  But I'm going to make it my business to find out

19    within the next couple days.  And if, if it's a

20    potential problem, I'll bring it to the Court's

21    attention.  If there is not, I won't.

22              THE COURT:  How many hours are there to

23    look at, Mr. Brown?

24              MR. BROWN:  Your Honor, this is a very

25    rough approximation.  Somewhere between probably 35 and

23

```
1    50 hours --

2                    Is that fair?

3                    -- talking with Special Agent Ryan Taylor

4    over all the CDs.

5                    THE COURT:  What's portrayed in these

6    literally?

7                    MR. BROWN:  Conversations.  There are audio

8    recordings of conversations.  There are video recordings

9    of meetings.  And there are several CDs of videos of

10   the, of the night of arrest.

11                   THE COURT:  Well, I guess this is a

12   question to the marshals.  Is it possible to have some

13   sort of global viewing of the Defendants in some

14   location other than at CCA?

15                   MR. KASALONES:  I could check with the

16   institution, Your Honor.

17                   THE COURT:  Because, because it's obviously

18   a problem that's been -- Mr. Pyle brought it to the

19   Court's attention.  There are a lot of things to look at

20   here.  And, and I don't know how long it would take.

21   But it sounds to me like it's, it's an impossibility at

22   CCA.

23                    I think that's what you're saying, John.

24                   MR. PYLE:  Unless they changed their

25   policy.
```

24

1      MR. KASALONES:  I, I'm sure we could work

2  with CCA and make it amenable to what can be done.

3      THE COURT:  If they could find some way to

4  accommodate.  But then, then you're going to have to all

5  agree, agree to show up on the day it's being shown.

6  Because you can't say, "I can't do it on that day."

7  We're back to the same problem.

8      John, I'm going to ask you to see if you

9  can coordinate with the marshal and the defense counsel

10  for some type of, of showing that would accommodate what

11  you're concerned about.

12      MR. PYLE:  I'll make my best effort, Your

13  Honor.

14      THE COURT:  That would be very helpful.

15      MS. SCHWARTZ:  Your Honor, my client is

16  also at CCA.  And I know that in other cases there have

17  been provisions where defendants were permitted to watch

18  the tapes on their own.  But I don't know that -- it's

19  going to be very difficult, particularly in the time

20  frame that we're discussing to get everyone together to

21  watch all 35 to 50 hours of these, these tapes.

22      THE COURT:  Well, I'm, I'm asking that you

23  cooperate with the marshal to see that you get something

24  going here.  I don't know that it's necessary to watch

25  every tape.

1          Can you, can you provide them with a

2     description of what's on the tape, Mr. Brown?

3          MR. BROWN:  The government certainly could,

4     with the recognition I'm sure each attorney and each

5     client would rather watch and decide on their own the,

6     the appropriate summary.  I mean the government can

7     provide a brief summary with the recognition that it's

8     the government's brief summary.

9          THE COURT:  Does every tape involve every

10    Defendant?

11         MR. BROWN:  No.  Actually in the discovery

12    letter, I have detailed -- actually Special Agent Taylor

13    has detailed, using initials, who's on the tape.

14         THE COURT:  Well, I believe that a

15    cooperative effort is necessary here.  I want Mr. Pyle

16    to be the moving force among the Defendants.

17         Mr. Brown, you on behalf of the government.

18    And then to the extent you need my marshal, the marshal

19    here, David, to help you, why, talk with him and see if

20    he could help you get this done.

21         But obviously we could be here next year

22    talking about viewing the tapes unless we get it done in

23    an appropriate fashion and accommodates all defense

24    counsel.

25         Is there anything further coming before the

1    Court today?

2                    MR. BROWN:  Nothing from the government.

3    Thank you, Your Honor.

4                    MR. VEGH:  Nothing, Your Honor, on behalf

5    of Mr. Wright.  Thank you, Judge.

6                    MR. PYLE:  Thank you.  No, Your Honor.

7                    THE COURT:  Thank you.

8                    MS. O'SHEA:  Nothing on behalf of Mr.

9    Hayne, Your Honor.  Thank you.

10                   THE COURT:  Thank you.

11                   MS. SCHWARTZ:  Nothing further on behalf of

12   Mr. Stevens.

13                   MR. IVEY:  Nothing further on behalf of Mr.

14   Stafford.

15                   THE COURT:  The Court will be in recess

16   then.  Thank you.

17                   (Proceedings adjourned at 10:30 a.m.)

18                           - - - -

19                   C E R T I F I C A T E

20       I, Jocelyn S. Harhay, RPR, certify that the
     foregoing is a correct transcript from the record of
21   proceedings in the above entitled matter.

22                   /s/ Jocelyn S. Harhay

23                   Date:  June 10, 2012

24

25